1 | Caroline N. Mitchell (State Bar No. 143124)
cnmitchell@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Angelina T. Evans (State Bar No. 244634)
aevans@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:     (213) 489-3939
Facsimile:      (213) 243-2539

Attorneys for Plaintiff
JOHNIE L. STOCKER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHNIE L. STOCKER,** | **Case No. 1:07-cv-00589-LJO-DLB** |
| **Plaintiff,** | **JOHNIE L. STOCKER'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **v.** | |
| **ANTHONY HEDGPETH, Warden, Kern Valley State Prison; SHARON ZAMORA, Health Care Manager, Kern Valley State Prison; N. GRANNIS, Chief of Inmate Appeals, Kern Valley State Prison; A. ALOMARI, Medical Appeals Analyst, Kern Valley State Prison; DAVID SMITH, M.D., Surgeon, CSP – Corcoran Specialty Clinic, JONATHAN AKANNO, M.D., Physician/Surgeon, Kern Valley State Prison; and DOES 1 through 50, inclusive** | **Judge:  Honorable Lawrence J. O'Neill** |
| **Defendants.** | |

Plaintiff Johnie L. Stocker ("Stocker"), pursuant to Federal Rule of Civil Procedure 15(a), files this First Amended Complaint against Defendants Anthony Hedgpeth, Warden, Kern Valley State Prison; Sharon Zamora, Health Care Manager, Kern Valley State Prison; N. Grannis, Chief of Inmate Appeals, Kern Valley State Prison; A. Alomari, Medical Appeals Analyst, Kern Valley State Prison; David Smith, M.D., Surgeon, Corcoran State Prison, Corcoran Specialty Clinic; Jonathan Akanno M.D., Physician/Surgeon Kern Valley State Prison; and Does 1 through 50, inclusive (collectively "Defendants"), and alleges as follows:

## **INTRODUCTION**

Stocker brings this action against Defendants, in their official and individual capacities, in response to the inadequate and deliberately indifferent medical care he received with regard to his dislocated finger while incarcerated at the California Department of Corrections and Rehabilitation at Kern Valley State Prison.  Defendants violated Stocker's federal civil rights and California state law rights because they deliberately failed to provide adequate treatment for Stocker's serious medical condition that was clearly visible and painful.  Defendants' failure to properly treat Stocker's dislocated finger resulted in unnecessary and wanton infliction of pain and suffering that has prevented him from using his left hand.

## **JURISDICTION & VENUE**

1.     This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges, and immunities, guaranteed by the Eighth Amendment of the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.     This Court has jurisdiction over Stocker's action under California Government Code § 845.6 pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred at the California Department of Corrections at Kern Valley State Prison, located in the Eastern District of California.

## THE PARTIES

4.   Plaintiff Johnie Stocker is, and at all times relevant to this action, has been an inmate incarcerated in the California Department of Corrections and Rehabilitation at Kern Valley State Prison.

5.   Upon information and belief, Defendant Anthony Hedgpeth is, and at all times relevant to this action, has been the warden of the California Department of Corrections and Rehabilitation at Kern Valley State Prison.  In his capacity as warden, Defendant Anthony Hedgpeth is responsible for the day-to-day management of the institution and takes part in establishing and enforcing policies and rules of the institution.

6.   Upon information and belief, Defendant Sharon Zamora is, and at all times relevant to this action, has been the health care manager at the California Department of Corrections and Rehabilitation at Kern Valley State Prison.  In her capacity as health care manager, Sharon Zamora is responsible for the day-to-day management of the overall healthcare system at Kern Valley State Prison.

7.   Upon information and belief, Defendant N. Grannis is, and at all times relevant to this action, has been the chief of inmate appeals, at the California Department of Corrections and Rehabilitation at Kern Valley State Prison.  In his capacity as chief of inmate appeals, Defendant N. Grannis is responsible for reviewing Stocker's complaints and determining whether Stocker has received or is receiving proper medical care.

8.   Upon information and belief, Defendant A. Alomari is, and at all times relevant to this action, has been the medical appeals analyst at the California Department of Corrections and Rehabilitation at Kern Valley State Prison.  In his capacity as medical appeals analyst, Defendant A. Alomari is responsible for reviewing and making determinations on Stocker's medical appeals.

9.   Upon information and belief, Defendant David Smith, M.D. is, and at all relevant times to this action, has been the primary orthopedic surgeon to Stocker at the Corcoran Specialty Medical Clinic at Corcoran State Prison.  In his capacity as the primary orthopedic surgeon to Stocker, Defendant David Smith, M.D. was responsible for ensuring that Stocker received

adequate medical care, including but not limited to, performing medical procedures to a professional standard and monitoring Stocker's medical condition with follow-up appointments.

10. Upon information and belief, Defendant Jonathan Akanno, M.D. is, and at all times relevant to this action, has been the primary physician for Stocker at the California Department of Corrections and Rehabilitation at Kern Valley State Prison. In his capacity as the primary physician for Stocker, Defendant Jonathan Akanno, M.D. was responsible for ensuring that Stocker received adequate medical care, including but not limited to, monitoring the Stocker's medical condition and properly prescribing treatment.

## FACTUAL BACKGROUND

11. On March 6, 2006, Stocker dislocated his left ring finger while playing basketball on the prison yard. He immediately reported the injury to the medical clinic on the prison yard (hereinafter the "MTA"). An MTA nurse called the prison's central medical facility, the Correctional Treatment Center (hereinafter the "CTC"), and informed them of the injury. The CTC refused to give treatment because it was too late in the day and advised the MTA nurse to splint Stocker's finger.

12. Despite making complaints and repeated visits to the MTA after the injury, Defendants failed to give Stocker an appointment with the CTC until March 13, 2006 – seven days after the injury occurred. By that time, the pain had intensified such that Stocker was unable to continue working in the yard crew.

13. On March 13, 2006, Defendants finally gave Stocker an appointment with the CTC. An x-ray revealed that Stocker's finger was dislocated. The x-ray technician informed Stocker that the finger needed to be reset and that a doctor would be in to reset it. Stocker waited for three-and-a-half hours inside the CTC cell, but the doctor never came. Stocker was sent back to his cell untreated.

14. The MTA made several calls to the CTC because the finger was clearly in bad condition. The finger was bent to the side, swollen to twice its normal size, and was purple and

black in color. The MTA stated that Stocker needed a referral "to orthopedics ASAP to minimize disability and deformity."

15. For the next seven weeks, Stocker visited the MTA with the permission of his floor officers on an almost daily basis, but his finger was not reset. An MTA nurse provided Stocker with tape and splints so he could splint the finger himself. Stocker refused splints when his finger began to set and the splints pressed painfully on his finger.

16. In late April, Defendants finally took Stocker to the hospital at Corcoran State Prison. Defendant Smith, the surgeon, informed Stocker the finger should have been reset the same day of the dislocation, and upon information and belief, Defendant Smith was bewildered as to why this was not done. Nevertheless, because the finger was not reset and was left untreated for so long, it had begun to heal while it was dislocated. Defendant Smith told Stocker that the finger would have to be cut open, the scar tissue would have to be cut away, and pins would need to be surgically placed to hold the finger in place.

17. On May 11, 2006, Stocker returned to Corcoran State Prison for the procedure. Stocker was given general anesthesia for the surgery and was told the pins would be removed after two weeks – the pins remained in his finger for approximately seven weeks.

18. Four days after the surgery, Stocker unwrapped the bandages and found no stitching or incision. Stocker met with Defendant Smith seven weeks later, on June 30, 2006, to have the pins removed. Defendant Smith informed Stocker that he was able to nudge the finger back into place, thus cutting the finger and removing the scar tissue was not necessary. Defendant Smith instructed Stocker to exercise his hand with a tennis ball. Stocker began the exercises two weeks after the pins were removed, however after only the second squeeze of the tennis ball his finger popped back out of socket.

19. For the next two months, Stocker made numerous requests for help to stabilize his dislocated finger. On September 28, 2006, Stocker met with Defendant Smith about a second surgery, but was not given treatment until the end of October despite his repeated requests.

20. Stocker was sent to Corcoran State Prison for a second surgery on October 31, 2006. At that point, Defendant Smith recommended either fusing the bones or amputating the

finger; both recommendations would result in permanent inability to use the finger. Stocker refused the recommended treatment and Defendant Smith then agreed to perform the surgery he had recommended in May. Defendant Smith performed the procedure and placed two pins back in his finger. Despite orders that Stocker should have a follow-up appointment in two weeks, the pins remained in his finger for over a month.

21. Stocker was taken to CTC on November 17, 2006 after feeling severe pain in the finger. An x-ray revealed that the finger was still dislocated even with the pins still inserted. A form that accompanied the test results indicated that the "test results are essentially unchanged" and "no physician follow up is required."

22. For the remainder of November, the pins remained in Stocker's finger despite the x-ray results showing that the finger was dislocated. Stocker woke one morning to find that his blanket had ripped one pin out of his finger while he was sleeping. The other pin had also been partially removed. Stocker then took five Motrin pills and removed the last pin himself.

23. On December 5, 2006, Stocker again was sent to Corcoran State Prison, where Defendant Smith explained that the reason Stocker's finger would not stay in place was because the side of the bone had been grinded down and would not set. This would not have happened if his finger was reset at the time of the injury. Defendant Smith gave him 3 options: (1) amputation, (2) fusion, or (3) grinding the bones so that they would lay flat on one another. Stocker understood that each of these options would result in permanent inability to use the finger. Stocker refused these procedures and informed Defendant Akanno, who performs initial evaluations of inmates at the CTC, that he wanted a second opinion. Defendant Akanno refused.

24. Stocker filed internal grievances relating to his injury and exhausted those grievances through the Director's Level. Stocker was denied relief at the Director's Level on January 23, 2007. This denial exhausted Stocker's institutional remedies.

25. Since his last visit with Defendant Smith on December 5, 2006, Defendants have failed to give Stocker any medical treatment on his finger. Stocker recently submitting two medical slips for follow-up treatment for his finger to which he has received no response. Occasionally, he receives Motrin for his pain.

26. Stocker can no longer bend his ring finger and cannot fully bend his middle and index fingers on his left hand.  Stockers lives in constant pain and has had to modify all of his activities as he does not have full use of his hand and must always protect his finger from further injury.  Stocker also lives in fear of being attacked as his finger, and the resulting inability to use two additional fingers on his hand, leaves him vulnerable.

## FIRST CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983, Eighth Amendment to the U.S. Constitution**

**(Against Defendants Anthony Hedgpeth, Sharon Zamora, N. Grannis, and A. Alomari)**

27. Stocker hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

28. Defendants Hedgpeth, Zamora, Grannis, and Alomari violated Stocker's right to be free from cruel and unusual punishment, guaranteed to Stocker under the Eighth Amendment to the U.S. Constitution, by failing to promptly and adequately ensure that Stocker's dislocated finger was treated.

29. Defendants Hedgpeth, Zamora, Grannis, and Alomari's wrongful acts alleged herein are in violation of 42 U.S.C. § 1983 because they deprived Stocker of rights, benefits, and privileges secured by the United States Constitution.

30. Defendants Hedgpeth, Zamora, Grannis, and Alomari acted under color of state law as they are the warden, health care manager, chief of inmate appeals, and medical appeals analyst, respectively, at the CDCR at KVSP.

31. Defendants Hedgpeth, Zamora, Grannis, and Alomari knew or should have known that their conduct, attitudes and actions, including but not limited to, failing to ensure that Stocker's injury was adequately treated and failing to respond to, and denying, Stocker's complaints and internal grievances related to his injury, created an unreasonable risk of serious harm to Stocker.

32. The actions and conduct of Defendants Hedgpeth, Zamora, Grannis, and Alomari demonstrate deliberate indifference to Stocker's Eighth Amendment rights.

33. As a proximate result of Defendants Hedgpeth, Zamora, Grannis, and Alomari's violation of Stocker's right to be free from cruel and unusual punishment, Stocker has suffered, is suffering, and will continue to suffer constant pain and the inability to use his left hand normally.

34. As a direct and foreseeable result of Defendants Hedgpeth, Zamora, Grannis, and Alomari's violations of the Eighth Amendment, Stocker suffered unnecessary and wanton infliction of pain and exacerbated physical injury in the form of constant pain, immobility in his finger, and inability to use his left hand normally.

## SECOND CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983, Eighth Amendment to the U.S. Constitution**

**(Against Defendants David Smith M.D. and Jonathan Akanno, M.D.)**

35. Stocker hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

36. Defendants Smith and Akanno violated Stocker's right to be free from cruel and unusual punishment, guaranteed to Stocker under the Eighth Amendment to the U.S. Constitution, by failing to promptly and adequately treat Stocker's dislocated finger.

37. Defendants Smith and Akanno's wrongful acts alleged herein are in violation of 42 U.S.C. § 1983 because they deprived Stocker of rights, benefits, and privileges secured by the United States Constitution.

38. Defendants Smith and Akanno acted under color of state law as physicians of the California Department of Corrections at Corcoran State Prison and at Kern Valley State Prison respectively.

39. Defendants Smith and Akanno knew or should have known that their conduct, attitudes and actions created an unreasonable risk of serious harm to Stocker.

40. The actions and conduct of Defendants Smith and Akanno, including but not limited to, failing to reset Stocker's finger within a reasonable time of it being dislocated, failing to hold follow-up appointments with Stocker despite Stocker's constant complaints of pain, and

1  leaving the pins in Stocker's finger for extended periods of time beyond what was prescribed,
2  demonstrates deliberate indifference to Stocker's Eighth Amendment rights.

3  41.   As a proximate result of Defendants Smith and Akanno's violation of Stocker's
4  right to be free from cruel and unusual punishment, Stocker has suffered, is suffering, and will
5  continue to suffer constant pain and the inability to use his left hand normally.

6  42.   As a direct and foreseeable result of Defendants Smith and Akanno's violations of
7  the Eighth Amendment, Stocker suffered unnecessary and wanton infliction of pain and
8  exacerbated physical injury in the form of constant pain, immobility in his finger, and inability to
9  use his left hand normally.

### THIRD CAUSE OF ACTION

**Violation of California Government Code § 845.6**

**(Against Defendants Anthony Hedgpeth, Sharon Zamora, N. Grannis, A. Alomari, David Smith, M.D., and Jonathan Akanno, M.D.)**

14  43.   Stocker hereby incorporates and adopts by reference each and every allegation set
15  forth in the preceding paragraphs as though fully set forth herein.

16  44.   Stocker had a serious need for immediate medical care on March 6, 2006 when he
17  first dislocated his finger.

18  45.   Defendants Hedgpeth, Zamora, Grannis, Alomari, and Akanno had reason to know
19  of Stocker's immediate need for medical care on March 6, 2006 because Stocker immediately
20  reported his injury to the MTA and the CTC.

21  46.   Defendant Smith had reason to know of Stocker's immediate need for medical
22  care in late April of 2006 when Stocker was first taken to the hospital at Corcoran State Prison for
23  his initial meeting with Defendant Smith.

24  47.   Stocker's medical condition was both serious and obvious as it caused him
25  extreme pain and was clearly noticeable because the finger was bent to the side, swollen to twice
26  its normal size, and purple and black in color.

27  48.   Defendants Hedgpeth, Zamora, Grannis, Alomari, Smith and Akanno failed to
28  reasonably summon such care, including but not limited to, in the following situations:  (1) failing

to schedule an initial appointment with Stocker until seven days after the injury despite almost daily complaints from Stocker, (2) failing to arrange surgery to reset the finger for over two months after an x-ray confirmed the finger was dislocated, (3) failing to schedule follow-up appointments within a reasonable time, and (4) failing to remove the pins from Stocker's finger within a reasonable time.

## **PRAYER FOR RELIEF**

WHEREFORE, Stocker respectfully prays for relief as follows:

(a) For declaratory relief against all defendants that the actions complained of herein violate Stocker's rights under the U.S. Constitution and as otherwise alleged herein;

(b) For compensatory and punitive damages in an amount to be determined at trial;

(c) For costs and reasonable attorney's fees; and

(d) For any other such relief as the Court deems proper.

Dated: July 30, 2007

Respectfully submitted,

Jones Day

By:/s/ Caroline N. Mitchell
Caroline N. Mitchell

Counsel for Plaintiff
JOHNIE L. STOCKER

**JURY TRIAL DEMAND**

Stocker requests a trial by jury of the causes of action contained herein.

Dated: July 30, 2007                    Respectfully submitted,

                                        Jones Day


                                        By:/s/ Caroline N. Mitchell
                                            Caroline N. Mitchell

                                        Counsel for Plaintiff
                                        JOHNIE L. STOCKER