# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNIE L. STOCKER,<br><br>                Plaintiff,<br><br>   v.<br><br>WARDEN, et. al.,<br><br>                Defendants. | 1:07-cv-00589 LJO DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION<br>(Doc. 40) |

       Defendants Jonathan Akanno, M.D., David Smith, M.D. and Sharon Zamora ("Defendants") filed the instant motion for summary judgment or, in the alternative, summary adjudication on January 30, 2009. The motion was heard on March 6, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Attorneys Angelina Chew, Yolanda Orozco and Kara Backus appeared on behalf of Plaintiff. Jill Scally appeared on behalf of Defendants.

## **BACKGROUND**

       Plaintiff Johnie L. Stocker ("Plaintiff"), initially proceeding pro se, filed a civil rights action on April 17, 2007. On July 30, 2007, Plaintiff, through counsel, filed a First Amended Complaint ("FAC"). The FAC involves allegations of inadequate and deliberately indifferent medical care and rehabilitation provided to Plaintiff after he dislocated his finger while incarcerated at Kern Valley State Prison.

Plaintiff asserted the following causes of action: (1) violation of civil rights (42 U.S.C. § 1983) premised on the Eighth Amendment for failure to promptly and adequately ensure that his dislocated finger was treated; and (2) violation of California Government Code section 845.6. He named the following defendants: (1) Anthony Hedgpeth, Warden, Kern Valley State Prison; (2) Sharon Zamora, Health Care Manager, Kern Valley State Prison; (3) N. Grannis, Chief of Inmate Appeals, Kern Valley State Prison; (4) A. Alomari, Medical Appeals Analyst, Kern Valley State Prison; (5) David Smith, M.D., Surgeon, CSP-Corcoran Specialty Clinic; and (6) Jonathan Akanno, M.D., physician/surgeon, Kern Valley State Prison.

All defendants except for Dr. Akanno, Dr. Smith and Sharon Zamora have been dismissed with prejudice from this action. (Doc. 44). Plaintiff's claim under California Government Code section 845.6 also has been dismissed with prejudice. (Doc. 49). Plaintiff proceeds only on his claims under the Eighth Amendment as to defendants Dr. Akanno, Dr. Smith and Sharon Zamora.

On January 30, 2009, Defendants filed the instant motion for summary judgment or, in the alternative, summary adjudication. Plaintiff filed an opposition on February 17, 2009. Defendants submitted a reply on February 27, 2009.

**DISCUSSION**

**I.     Undisputed Facts**

1. At all times relevant to this action, Plaintiff was an inmate at the California Department of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison ("Kern Valley").
2. On March 5, 2006, Plaintiff's left ring finger was dislocated while playing basketball at Kern Valley.
3. At all times relevant, Dr. Akanno was a duly licensed medical doctor employed by the CDCR as a physician and surgeon at Kern Valley. Dr. Akanno was assigned to work in the A-Yard Clinic at Kern Valley.
4. Dr. Akanno had the opportunity to examine and treat Plaintiff's left ring finger on several occasions.
5. Dr. Akanno has thoroughly reviewed Plaintiff's medical records and administrative inmate

|     |     |                                                                                          |
| --- | --- | ---------------------------------------------------------------------------------------- |
| 1   |     | appeals.                                                                                 |
| 2   | 6.  | Dr. Akanno became aware of Plaintiff's dislocated finger on March 5, 2006, when he was   |
| 3   |     | contacted via telephone at approximately 7:40 p.m. by a nurse at the prison.             |
| 4   | 7.  | When he became aware of Plaintiff's dislocated finger, Dr. Akanno gave a telephonic order |
| 5   |     | that Plaintiff's finger should be splinted, the hand elevated and that Plaintiff should be seen |
| 6   |     | by a nurse the next morning so that he could be referred for the appropriate treatment. Dr. |
| 7   |     | Akanno also ordered that Plaintiff be given 2 doses of 400mg Motrin.                     |
| 8   | 8.  | On March 6, 2006, Plaintiff's floor unit officers allowed Plaintiff to go to the A-Yard Clinic |
| 9   |     | on his own.[1]                                                                           |
| 10  | 9.  | Between approximately March 6, 2006, through March 13, 2006, Plaintiff returned to the A- |
| 11  |     | Yard Clinic almost daily to get treatment for the dislocation.                           |
| 12  | 10. | On March 13, 2006, Plaintiff was transported to the Correctional Treatment Center ("CTC") |
| 13  |     | to have an x-ray taken.                                                                  |
| 14  | 11. | For approximately three weeks after the x-ray was taken, from March 13, 2006, to April 4, |
| 15  |     | 2006, Plaintiff continued to go to the A-Yard Clinic on almost a daily basis requesting that |
| 16  |     | someone reset his finger.                                                                |
| 17  | 12. | On March 14, 2006, Dr. Akanno was contacted because Plaintiff needed pain medication for |
| 18  |     | his finger. Dr. Akanno approved a ninety-day prescription for 800 mg Motrin.             |
| 19  | 13. | On March 30, 2006, Plaintiff began filling out Health Care Services Request Forms for his |
| 20  |     | finger.[2]                                                                               |

---

[1] Defendants do not expressly dispute the facts identified in Undisputed Facts ("UF") 8-11, 25, 33. Defendants have filed objections. However, Defendants' objections to statements in Plaintiff's declaration underlying these facts on grounds of relevance and materiality are OVERRULED. (Doc. 50-5). Plaintiff's efforts to obtain treatment are relevant and material to claims of deliberate indifference. Fed. R. Evid. 401.

[2] Defendants object to Plaintiff's declaration and the underlying Health Care Services Request Forms, but do not expressly dispute the facts identified in UF 13, 17, 29, 40. Defendants' objections to the portions of Plaintiff's declaration underlying his contention that he filled out Health Care Services Request forms on the grounds of relevance and immateriality are OVERRULED. (Doc. 50-5). Plaintiff's efforts to obtain treatment are relevant and material to his deliberate indifference claims. Fed. R. Evid. 401.

Insofar as Defendants object to the Health Care Services Request Forms, Exhibits 1-11, 13-16, on grounds of lack of foundation and authentication, relevancy and hearsay, the objections should be OVERRULED. Plaintiff describes how and why the prison makes these forms available, describes each

| | |
|---|---|
| 1 | 14. Dr. Akanno first met with Plaintiff regarding his dislocated finger on April 4, 2006. Plaintiff's finger was swollen and tender. Dr. Akanno ordered an urgent orthopedics referral. |
| 3 | 15. The referral was marked "urgent" because Dr. Akanno knew that referrals sometimes took up to two months if they were marked "routine." |
| 5 | 16. Dr. Akanno had Plaintiff's March 30, 2006 Health Care Services Request Form with him during the April 4, 2006 appointment. |
| 7 | 17. After the April 4, 2006 appointment with Dr. Akanno, Plaintiff filled out three Health Care Services Request Forms in April 2006 to follow-up on the orthopedic appointment and to get medical attention. |
| 10 | 18. On April 25, 2006, Plaintiff again saw Dr. Akanno. Dr. Akanno reviewed an x-ray report taken more than five weeks before on March 13, 2006. Dr. Akanno concluded that Plaintiff's finger was dislocated and referred Plaintiff for an urgent orthopedic appointment. |
| 13 | 19. On April 27, 2006, Plaintiff was transported to Corcoran State Prison for an appointment with Dr. David Smith, an orthopedist. |
| 15 | 20. At all times relevant, Dr. Smith was a duly licensed private practice medical doctor under contract with the CDCR to provide services to inmates. In his capacity as a CDCR contract doctor, Dr. Smith had the opportunity to provide plaintiff with care and treatment for his left ring finger. Dr. Smith has reviewed Plaintiff's medical records. |
| 19 | 21. Plaintiff claims that Dr. Smith informed him in April 2006 that Plaintiff's finger should have been reset the day of the dislocation. |
| 21 | 22. At the April 27, 2006 appointment, Dr. Smith scheduled Plaintiff for an open reduction and internal fixation ("ORIF"). |

---

time he filled out a form and authenticates each form as a true and correct copy. Fed. R. Evid. 901(b)(1). Defendants have not presented a valid basis for contesting the authenticity of the Health Care Services Request Forms and they have not asserted that the documents are not what they claim to be. Fed. R. Evid. 901. Further, Plaintiff's efforts to obtain medical attention, which are documented in the Health Care Services Forms, are relevant to his deliberate indifference claims. Fed. R. Evid. 401. Although Defendants object to the Health Care Services Request Forms on hearsay grounds, Defendants generally object to entire documents and not particular statements. To prevail on a hearsay objection, Defendants must object to particular statements and explain the objection. See, e.g., Cassells v. Mehta, 2007 WL 2390392, * 4 (E.D.Cal. August 20, 2007) (overruling hearsay objection where defendants objections were *pro forma* objections to entire documents).

| | |
|---|---|
| 23. | On May 11, 2006, Dr. Smith reduced the dislocation in Plaintiff's finger. Dr. Smith did not perform an ORIF, which involves making a surgical incision on the finger, removing scar tissue, manipulating the finger bone back into alignment, and placing pins to hold the bone in place. Dr. Smith discovered during the procedure that he could reduce the dislocation and place pins without surgically opening the finger. |
| 24. | Dr. Smith ordered that Plaintiff be scheduled for a follow-up appointment in two weeks. |
| 25. | After May 11, 2006, Plaintiff started to visit the A-Yard Clinic regularly to inquire about the follow-up appointment. |
| 26. | On May 19, 2006, in response to a request to refill Plaintiff's medication, Dr. Akanno prescribed Vicodin and Motrin for Plaintiff. |
| 27. | On June 30, 2006, Plaintiff saw Dr. Smith for a follow-up appointment. Dr. Smith removed the pins. Dr. Smith noted that the finger was stiff, but instructed Plaintiff to begin range-of-motion exercises, suggesting that he squeeze a ball or wet towel. |
| 28. | After Plaintiff's June 30, 2006 appointment with Dr. Smith, he began exercising his finger when he was able to bend it somewhat. Plaintiff attempted to squeeze a racquetball. On the third squeeze, Plaintiff heard and felt a large pop, and his finger immediately became extremely painful, swollen and crooked. |
| 29. | On July 17, 2006, Plaintiff filled out a Health Care Services Request Form. |
| 30. | On July 21, 2006, Plaintiff saw Dr. Akanno and explained his re-injury. Dr. Akanno ordered that Plaintiff's finger be x-rayed, prescribed Motrin and referred Plaintiff to orthopedics for routine, outpatient consultation. |
| 31. | On July 25, 2006, Plaintiff filed an administrative appeal regarding his left ring finger. |
| 32. | Plaintiff saw Dr. Akanno again on August 1, 2006. Dr. Akanno prescribed a different pain medication. |
| 33. | Between August 2, 2006, and September 21, 2006, Plaintiff continued to go to the A-Yard Clinic for his finger. He was not seen by a doctor during this time period. |
| 34. | On September 22, 2006, Dr. Akanno was assigned to investigate Plaintiff's administrative appeal. |

| | |
|---|---|
| 1 | 35. Dr. Akanno discussed Plaintiff's condition with a specialty clinic nurse who told him that Plaintiff had an orthopedic appointment scheduled for September 28, 2006. He provided information to the second level reviewer, S. Zamora. |
| 4 | 36. At all times relevant, Ms. S. Zamora was employed by CDCR as a Correctional Health Services Administrator II, Health Care Manager (Acting) at Kern Valley. |
| 6 | 37. Ms. Zamora is not a medical doctor. |
| 7 | 38. On September 28, 2006, Plaintiff saw Dr. Smith for the re-dislocation of his finger. X-rays showed degenerative changes. Dr. Smith requested Plaintiff be scheduled for an ORIF. |
| 9 | 39. On October 6, 2006, Dr. Akanno prescribed Naproxen for Plaintiff. |
| 10 | 40. On October 12, 2006, Plaintiff filled out a Health Care Services Request Form to see Dr. Akanno. |
| 12 | 41. On October 24, 2006, Ms. Zamora partially granted Plaintiff's administrative appeal due to his pending orthopedic appointment. She responded to the appeal based on information provided to her by Dr. Akanno. |
| 15 | 42. On October 26, 2006, Dr. Akanno requested that Plaintiff be referred to orthopedics for the ORIF procedure. |
| 17 | 43. On October 31, 2006, Plaintiff was transported to Corcoran State Prison and Dr. Smith performed the ORIF. He also ordered that Plaintiff return for follow-up in two weeks. |
| 19 | 44. On or about November 17, 2006, Dr. Akanno was informed by a nurse from the clinic that Plaintiff had come in and reported that he had undergone surgery two weeks prior and that he had hit his finger and it had "popped." He immediately saw Plaintiff in the clinic. Dr. Akanno prescribed Motrin and ordered that the finger be X-rayed immediately. Plaintiff's finger was x-rayed that day. |
| 24 | 45. On November 21, 2006, Plaintiff received a form providing him with the results of his x-ray. On that form, Dr. Akanno checked a box that stated: "Your test results are essentially within normal limits or are unchanged and no physician follow up is required." The words "within normal limits" were crossed out. |
| 28 | 46. On November 28, 2006, Plaintiff saw Dr. Smith for the last time. Dr. Smith noted Plaintiff |

1     had a deformity of the finger and recommended an osteotomy.

2 47.    On December 5, 2006, Plaintiff saw Dr. Akanno for the last time. Plaintiff informed Dr.
3     Akanno that he was unwilling to undergo the osteotomy.

**II.    Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323-24. In such a circumstance, summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

1   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

**III.    Analysis**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not

violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). At this stage in the proceedings, Plaintiff may not rely on the general allegations in his complaint or on general assertions of wrongdoing by Defendants or other medical providers. Plaintiff must come forth with specific evidence that Defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health...." Farmer, 511 U.S. at 837.

Here, the parties do not dispute that Plaintiff had a serious medical need. Instead, they dispute whether or not Defendants were deliberately indifferent to that need.

**A.    Dr. Akanno**

Plaintiff claims that defendant Dr. Akanno failed to promptly and adequately treat his dislocated finger. FAC, ¶ 36. Defendants seek summary judgment on Plaintiff's claims against Dr. Akanno, arguing that Dr. Akanno provided Plaintiff treatment or examined him every time Plaintiff's medical condition was brought to his attention.

1.    Dr. Akanno's Delay

Plaintiff asserts that Dr. Akanno's delay in providing treatment to Plaintiff demonstrates his deliberate indifference. Deliberate indifference may be manifested when prison officials delay medical treatment. Jett, 439 F.3d at 1096. Plaintiff further argues that the delays caused serious harm, including months of pain and suffering. The needless suffering of pain may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Plaintiff points to two periods of delay in his treatment and contends that they highlight important questions of fact and prevent entry of summary judgment: (1) the initial delay between March 5, 2006, and May 11, 2006, after Plaintiff first dislocated his finger; and (2) the second delay between approximately July 17, 2006, and October 31, 2006, when Plaintiff dislocated his finger a second time.

a.    Initial Delay between March 5, 2006 and May 11, 2006

Plaintiff complains that despite becoming aware of his injury on March 5, 2006, "Dr. Akanno *never* followed up to determine the extent of [Plaintiff's] injury and what further medical attention he required." Plaintiff's Opposition, p. 17 (emphasis in original). The undisputed evidence

demonstrates that Dr. Akanno was aware of Plaintiff's injury on March 5, 2006, and he knew that Plaintiff required appropriate treatment as soon as March 6, 2006. (UF 6-7). There is additional evidence that Plaintiff returned to the A-Yard Clinic almost daily between March 5 and April 4, 2006, to obtain treatment; Dr. Akanno prescribed medication for Plaintiff on March 14, 2006, doubling the strength of the original dosage, without ever having examined Plaintiff; beginning March 30, 2006, Plaintiff began filling out Health Care Services Request Forms for his finger;[3] and Dr. Akanno ultimately did not meet or examine Plaintiff until April 4, 2006, approximately 30 days after he became aware of the injury. (UF 9, 11-14). The record further reflects that following the April 4, 2006, appointment at which Dr. Akanno made an orthopedic referral, Plaintiff filled out three Health Care Services Request Forms to follow-up on the orthopedic appointment and to get medical attention, but Plaintiff did not see Dr. Akanno again until April 25, 2006. (UF 17-18). Plaintiff also did not see the orthopedic surgeon, Dr. Smith, until April 27, 2006, almost two months after the dislocation occurred. (UF 19).

Defendants provide no evidence to allow the court to find that Dr. Akanno provided Plaintiff with timely and appropriate medical care during the period between March 5, 2006, and April 4, 2006. At best, the record reflects that Dr. Akanno prescribed medication for Plaintiff on at least two occasions without even examining him and despite being aware of the general nature of the injury on March 5, 2006. There is no explanation for Dr. Akanno's delay in examining Plaintiff between March 5, 2006, and April 4, 2006.

        b.     Second Delay between approximately July 17, 2006 and October 31, 2006

Plaintiff also cites a delay following his re-injury between July 17, 2006, and October 31, 2006, to demonstrate deliberate indifference by Dr. Akanno. The record reflects Plaintiff re-

---

[3] Plaintiff identifies twelve separate Health Care Services Request Forms that he filled out between March 5, 2006 and October 31, 2006. Plaintiff also cites Dr. Akanno's testimony that these documents usually get placed in a patient's medical file after they are filled out and it is his practice to try to review a patient's medical file before he sees the patient if it is available. Plaintiff argues that he is entitled to the inference that Dr. Akanno was aware of Plaintiff's requests for medical services. The Court agrees. Jett, 439 F.3d at 1097 ("As the party opposing the motion for summary judgment, [plaintiff] is entitled to an inference that [the doctor] was aware of the filed grievance, medical slips, and aftercare instructions in his medical record."). Further, the record reflects that on at least one occasion Dr. Akanno had one of Plaintiff's Health Care Services Request Forms during an appointment with Plaintiff. (UF 16).

dislocated his finger sometime before July 17, 2006. (UF 28). Plaintiff saw Dr. Akanno on July 21, 2006, and informed him of the re-injury. (UF 30). Dr. Akanno did not attempt to reset the finger, but made a "routine" referral for Plaintiff to see Dr. Smith. (UF 30). Plaintiff saw Dr. Akanno again on August 1, 2006, but Dr. Akanno did nothing to expedite the orthopedic appointment. (UF 32). Between August 2, 2006 and September 21, 2006, Plaintiff continued to go to the A-Yard clinic for his finger. (UF 33). Plaintiff saw Dr. Akanno again on September 22, 2006. Plaintiff did not see Dr. Smith until September 28, 2006, approximately 74 days after the re-dislocation. (UF 38).

As with the previous period of delay, Defendants present no evidence from which the court may make a finding that the medical care Dr. Akanno provided was adequate and timely given the nature and extent of his re-injury. Insofar as Defendants argue that Dr. Akanno is not responsible for the actual scheduling of appointments, this does not resolve the issue of his "routine" referral of Plaintiff or any delay in providing adequate treatment at the A-Yard Clinic.

Accordingly, the two periods of delay create a triable issue of material fact as to whether Dr. Akanno was deliberately indifferent and they prevent summary judgment.

2.      Dr. Akanno's Treatment

Plaintiff further contends that "blatantly inappropriate treatment" is an additional way of proving deliberate indifference. Plaintiff cites Greeno v. Dailey, 414 F.3d 645, 654 (7th Cir. 2005), a Seventh Circuit decision that rejected a defendant's contention that a state prisoner's claim failed because he received *some* treatment because the contention overlooked the possibility that the treatment the prisoner did receive was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." Id. (citations omitted).

Plaintiff acknowledges Defendants' argument that Dr. Akanno saw Plaintiff a number of times, but counters that Dr. Akanno did nothing to treat Plaintiff's dislocation, i.e. reset it.

At deposition, Dr. Akanno admitted both that his responsibility for treating Plaintiff's injury did not end after he issued the telephonic order on March 5, 2006, and that in the normal course it is better to reset a dislocated finger as quickly as possible after the injury. Declaration of Angelina Chew ("Chew Decl."), Exhibit 24 (Deposition of Dr. Akanno, 33:22-25; 34:1-7; 40:23-41:1). Dr.

Smith also testified that a dislocated joint should be re-set as soon as possible.[4] Chew Decl., Exhibit 26 (Deposition of Dr. Smith, 30:22-25; 37:23-38:10. It is undisputed that Dr. Akanno never reset or attempted to reset Plaintiff's dislocated finger. The record demonstrates, however, that Plaintiff's injury needed, at a minimum, treatment the morning after the first dislocation. (UF 7). The record also demonstrates that Plaintiff needed treatment and possible referral to a specialist following his re-injury. (UF 30). In addition, the record reflects that Dr. Akanno prescribed medications without ever having examined Plaintiff and that Dr. Akanno did not review available x-rays when he examined Plaintiff for the first time. (UF 7, 12).

In contrast, Defendants present no evidence that the medical care Dr. Akanno provided Plaintiff was appropriate and a reasonable jury could conclude that his treatment, e.g., pain medication without examination and no effort to reset the finger, was blatantly inappropriate. The submitted evidence viewed in its entirety in a light most favorable to Plaintiff is sufficient to demonstrate triable issues of fact as to whether Dr. Akanno's care was deliberately indifferent to Plaintiff's medical need.

**B.  Dr. Smith**

Plaintiff claims that defendant Dr. Smith failed to promptly and adequately treat his dislocated finger. FAC, ¶ 36. Defendants contend that Plaintiff's claim fails and summary judgment should be granted because Dr. Smith provided Plaintiff treatment or examined him every time his medical condition was brought to his attention.

1.  Dr. Smith's Delay

As with Dr. Akanno, Plaintiff contends that Dr. Smith's delay in providing follow-up treatment is relevant to proving deliberate indifference. To support his contention, Plaintiff points to the failure to receive follow-up treatment after Dr. Smith performed the closed reduction procedure on May 11, 2006. Plaintiff indicates that after the procedure, Dr. Smith made a note in his file that

---

[4] Defendants object to the portions of the deposition testimony referenced by Exhibits 24 and 26 to the Declaration of Angelina Chew on the ground that they include incomplete statements by the deponent and are misleading. (Doc. 50-5). Defendants provide no evidentiary or legal basis for the exclusion of these exhibits and the objections are OVERRULED.

Plaintiff should have a follow-up appointment within two weeks, but Plaintiff never had the appointment. Plaintiff fails to raise a genuine issue that suggests any scheduling delay was due to Dr. Smith's deliberate indifference to a serious medical need. It is undisputed that after Dr. Smith operated on Plaintiff's dislocated finger, he saw Plaintiff on June 30, 2006, for follow-up. (UF 27). Plaintiff also does not dispute that during the period between May 11, 2006 and June 30, 2006, Plaintiff received medical care from Dr. Akanno, which included pain medication. (UF 26). Mere "indifference," "negligence," or "medical malpractice" will not support a claim of deliberate indifference under the Eighth Amendment. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980), citing Estelle, 429 U.S. at 105-06.

Plaintiff also cites the more than three month delay of Dr. Smith to correct Plaintiff's July 2006 re-injury. Plaintiff indicates that Dr. Akanno submitted a referral to Dr. Smith on July 21, 2006, but despite the referral Dr. Smith did nothing to schedule an appointment, ultimately not seeing Plaintiff until September 2006. The record reveals that on July 21, 2006, a Health Care Services Physician Request for Services related to the orthopedic referral was completed by Dr. Akanno. The form notes that after completion it is given to the Utilization Management Unit. Akanno Decl., ¶ 17, MED00157, Health Care Services Physician Request for Services. However, there is no evidence to suggest that Dr. Smith, who provided services at Corcoran State Prison, knew of the re-injury by Plaintiff at Kern Valley State Prison or knew of the subsequent referral for treatment by Dr. Akanno submitted to the Utilization Management Unit.

2. Dr. Smith's Treatment

As with Dr. Akanno, Plaintiff contends that Dr. Smith's "blatantly inappropriate treatment" is an additional way of proving deliberate indifference. Greeno, 414 F.3d at 654. Plaintiff argues there are several facts that could lead a reasonable jury to determine that Dr. Smith provided blatantly inappropriate treatment.

Plaintiff first identifies that Dr. Smith admitted that a dislocated finger should be reset as soon as possible after dislocation, but did not attempt to reset Plaintiff's finger when he met with Plaintiff on April 27, 2006. Plaintiff's argument is unpersuasive. This is not a situation in which Dr. Smith merely prescribed medication, but did nothing to correct the dislocation. The undisputed

evidence indicates that when Dr. Smith saw Plaintiff on April 27, 2006, he scheduled corrective surgery to treat the dislocated finger. (UF 19, 22). The surgery occurred on May 11, 2006, within two weeks of the April 27, 2006, appointment. (UF 23). Mere disagreement over the reasonableness of Dr. Smith's treatment, without more, does not support a claim of deliberate indifference. Toguchi, 391 F.3d at 1059-60.

Plaintiff next points to evidence that Dr. Smith did not perform an ORIF on May 11, 2006. Instead, he put Plaintiff under general anesthesia and performed a closed reduction. Plaintiff argues that Dr. Smith should have first attempted the closed reduction using local anesthesia. That Dr. Smith performed a different procedure is insufficient to demonstrate blatantly inappropriate treatment. The Eighth Amendment does not provide a right to a specific treatment. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

As a final matter, Plaintiff argues that Dr. Smith failed to order physical therapy for Plaintiff after removing the pins in June 2006, despite noting that Plaintiff should begin range of motion of exercises and despite admitting in his deposition that physical therapy and range of motion exercises would make it more likely for a patient with a dislocated finger to make a full recovery. However, it is undisputed that Dr. Smith saw Plaintiff on June 30, 2006, removed the pins and instructed Plaintiff to begin range-of-motion exercises. (UF 27). Plaintiff admits that after June 30, 2006, he re-injured his finger while doing the exercises recommended by Dr. Smith. (UF 28). The undisputed facts do not support any inference that Dr. Smith "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Dr. Smith is entitled to summary judgment.

**3.    Ms. Zamora**

Plaintiff claims that Ms. Zamora failed to promptly and adequately ensure that Plaintiff's dislocated finger was treated. FAC, ¶ 28. Defendants argue that there is no evidence that Ms. Zamora knew of an excessive risk to Plaintiff's health and disregarded it. Plaintiff seeks to impose liability on Ms. Zamora based on "failed policies" to ensure timely and adequate medical care and failure to train subordinates.

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor [may be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). In Hydrick, the court considered a motion to dismiss and determined that because the defendants were directors and policy-makers for the hospital, plaintiffs had sufficiently alleged that the constitutional violations they suffered were "set in motion" by the defendants policy decision or, at the very least, that they knew of the alleged abuses and demonstrated deliberate indifference to the plaintiffs' plight. Id.

Although Plaintiff argues that Ms. Zamora is responsible for creating policy and training subordinates, there is no evidence that she is responsible for authorizing medical care, that she had any authority regarding the clinical aspects of prison medical treatment or that she made any decisions related to Plaintiff's health care. There also is no evidence that Ms. Zamora knew of Plaintiff or his condition prior to October 24, 2006, when she responded to his inmate appeal as the second level reviewer. At that stage, Ms. Zamora was informed that Plaintiff was scheduled for an appointment with an orthopedist. (UF 32).

Insofar as Plaintiff seeks to impose liability on Ms. Zamora for ensuring that his inmate appeal was processed in a timely manner or for checking to see if Dr. Akanno had interviewed Plaintiff regarding his appeal, this argument is directed at the prison grievance procedure. The law is clear that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988), cert. denied, 488 U.S. 898 (1988); see Sandin v. Connor, 515 U.S. 472, 484 (1995) (noting that liberty interests are generally limited to freedom from restraint). As one court explained, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999). Rather, where defendants' "only roles in [a civil rights] action involve the denial of administrative grievances or the failure to act ... they cannot be liable under § 1983." Id.

Ms. Zamora's role was limited to the administrative grievance procedure and there is no indication she was deliberately indifferent. Ms. Zamora is entitled to summary judgment.

**CONCLUSION AND RECOMMENDATIONS**

Based on the above, the Court RECOMMENDS that Defendants' motion for summary judgment, filed on January 30, 2009, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion for summary judgment/summary adjudication as to Plaintiff's claims under 42 U.S.C. section 1983 against Defendant Dr. Akanno be DENIED.

2. Defendants' motion for summary judgment as to Plaintiff's claims under 42 U.S.C. section 1983 against Defendant Dr. Smith be GRANTED.

3. Defendants' motion for summary judgment as to Plaintiff's claims under 42 U.S.C. section 1983 against Defendant S. Zamora be GRANTED.

These Findings and Recommendations are submitted to the district judge assigned to this action, pursuant to the provisions of 28 U.S.C. § 631 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days (plus three days if served by mail) after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __April 13, 2009__      _____/s/ Dennis L. Beck_____
                                UNITED STATES MAGISTRATE JUDGE